UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD P. JAGER,

       Plaintiff,                      CIVIL ACTION NO. 11-15192

       v.                             MAGISTRATE JUDGE MARK A. RANDON

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT, GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NOS. 12
& 15), AND AFFIRMING THE FINAL DECISION OF THE COMMISSIONER**

**I.    PROCEDURAL HISTORY**

    *A.    Proceedings in this Court*

On November 28, 2011, Plaintiff filed suit seeking judicial review of the Commissioner's decision to deny social security benefits. (Dkt. No. 1). On August 23, 2012, the parties consented to this Magistrate Judge's jurisdiction to review the Commissioner's decision. (Dkt. No. 16). Cross-motions for summary judgment are pending. (Dkt. Nos. 12, 15).

    *B.    Administrative Proceedings*

Plaintiff applied for disability and disability insurance benefits on July 22, 2010, alleging a disability onset date of March 30, 2007. (Tr. 10). The application was initially denied by the Commissioner on October 4, 2010. (Tr. 10). On July 28, 2011, Plaintiff appeared with counsel for a hearing before Administrative Law Judge ("ALJ") Roy L. Roulhac, who considered the case *de novo*. On August 23, 2011, the ALJ found that Plaintiff was not disabled. (Tr. 10-16).

Plaintiff requested a review of this decision. (Tr. 1-3). On November 7, 2011, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. (Tr. 1-5).

In light of the entire record, this Magistrate Judge finds that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, Plaintiff's motion for summary judgment is **DENIED**, Defendant's motion for summary judgment is **GRANTED**, and the findings and conclusions of the Commissioner are **AFFIRMED**.

## II.    STATEMENT OF FACTS

### A.    *ALJ Findings*

In analyzing Plaintiff's claim, the ALJ applied the five-step disability analysis and found at step one that Plaintiff had not engaged in substantial gainful activity. (Tr. 12).

At step two, the ALJ found Plaintiff had the following "severe" impairments: degenerative joint disease, obesity, and familial tremors. (Tr. 12).

At step three, the ALJ found no evidence that Plaintiff had an impairment or combination of impairments that met or medically equaled one of the listed impairments in the regulations. (Tr. 13).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform sedentary work with a "sit/stand at will option . . ., occasional handling, climbing of ramps and steps, balancing, stooping, kneeling, crouching, and crawling. He should avoid concentrated exposure to unprotected heights." (Tr. 13).

At step four, the ALJ found Plaintiff could perform his past relevant work as a "recruiter/sales representative and a mobile home sales representative." Accordingly, the ALJ found Plaintiff was not disabled. (Tr. 16).

### B. Administrative Record

#### 1. Plaintiff's Testimony & Statements

Plaintiff testified at the administrative hearing that he was 61-years-old with a 10th grade education. (Tr. 25). Plaintiff has worked as a truck driver, bus driver, recruiter, and mobile home salesman. (Tr. 25-27).

Plaintiff has arthritis in his back, shoulders, and hips. He is diabetic, has familial tremors, an enlarged heart, and trouble with his right knee. (Tr. 30-32, 35-37). Sometimes Plaintiff has trouble gripping a jar. (Tr. 38). He testified that he can only stand for 15 minutes, sit for about an hour, needs to elevate his legs 2-3 times per day, cannot lift or carry more than ten pounds, and cannot write. (Tr. 31-32, 38-39). Plaintiff said that, whenever he relaxes his head, he starts to shake, and occasionally, when he unclasps his hands, they shake so violently he cannot hold a cup of coffee. (Tr. 31). Plaintiff takes nine different medications; the side effects include diarrhea and fatigue (Tr. 37-38).

Plaintiff testified that his friend cuts his grass and shovels his snow. (Tr. 33). His wife does the shopping. (Tr. 34-35). A typical day for Plaintiff includes using the computer (for one-and-a-half to two hours), watching television and reading. (Tr. 34).

Despite his limitations, Plaintiff does not have any problems driving; he can bathe, dress, and groom himself; and he can wash dishes and clean the kitchen. (Tr. 34, 39).

#### 2. Medical Evidence

Plaintiff visited Dr. Joseph A. George at least ten times between 2007 and 2009: (1) on March 9, 2007, Plaintiff's legs were swollen (Tr. 309); (2) on April 9, 2007, Plaintiff complained of pain in his right knee, right leg, and right ankle (Tr. 243); (3) on June 12, 2007, Plaintiff indicated he felt depressed, tired, and was having trouble sleeping (Tr. 245); (4) on July 10, 2007,

July 25, 2007, July 30, 2008, and February 23, 2009, Plaintiff weighed over 300 pounds (Tr. 245-246, 251, 253); (5) on April 18, 2008, Plaintiff indicated he felt tired and confused (Tr. 249); (6) on January 16, 2009, Plaintiff complained of bilateral hand shaking and tremors upon gripping, and he was diagnosed with carpal tunnel syndrome (Tr. 252-253); (7) on May 26, 2009, Plaintiff weighed 371 pounds (Tr. 256); (8) on May 29, 2009, Plaintiff was diagnosed with sleep apnea (Tr. 256); (9) on July 30, 2009, Plaintiff weighed 367 pounds, and he was diagnosed with obesity and leg edmea (Tr. 257); and (10) on September 14, 2009, Plaintiff weighed 375 pounds. (Tr. 258).

On May 27, 2008, Plaintiff visited Dr. Kevin J. Sprague at the Michigan Bone and Joint Center for right knee pain that he had for six months. Dr. Sprague indicated that Plaintiff, who is six feet tall (Tr. 15), weighed over 300 pounds and had a history of diabetes. X-rays of the right knee showed narrowing of the medial compartment. He was given a cortisone injection in his right knee. (Tr. 259). Plaintiff received additional cortisone injections in his right knee on May 28, 2008, January 28, 2009, and September 9, 2010. (Tr. 260-261, 307).

On May 12, 2009, Dr. Robert Pensler performed a sleep study on Plaintiff and found his sleep efficiency was diminished at 81%. (Tr. 381).

On July 1, 2009, Dr. Michael A. Kalata indicated that Plaintiff's problems included obesity, diabetes, and arthritis of his right knee. (Tr. 280). He also diagnosed Plaintiff with atypical chest pain. (Tr. 282).

On August 5, 2009, Plaintiff went back to the Michigan Bone and Joint Center for pain in his right lower lumber region that Plaintiff said was aggravated with prolonged standing. (Tr. 262).

On August 7, 2009, Plaintiff went to the Oakwood Southshore Physical Medicine and Rehabilitation Center with a complaint of low back pain when he walked. Plaintiff indicated that the back pain started nine months before his visit. Plaintiff had difficulty lifting and bending over, pain when standing and walking more than 15 minutes, and difficulty getting in and out of bed and his car. (Tr. 263).

On October 26, 2009 and November 9, 2009, Dr. Baldev Gupta indicated that Plaintiff weighed 370 pounds. (Tr. 266, 268). On December 14, 2009, Plaintiff weighed approximately 360 pounds. (Tr. 269).

On January 18, 2010, Dr. Gupta indicated that Plaintiff weighed 360 pounds and diagnosed him with morbid obesity. (Tr. 270).

On February 16, 2010, Plaintiff weighed over 350 pounds. (Tr. 271).

On August 12, 2010, Plaintiff visited the Michigan Bone and Joint Center for pain in both knees and in his lower back. X-rays showed bilateral knee pain, and he received cortisone injections in his knees and back. (Tr. 264).

On September 1, 2010, Plaintiff visited Dr. Ram S. Garg with concerns about shaking in his left hand that Plaintiff, described as uncontrollable at times. The tremors in Plaintiff's hands were stable and did not limit his activities, but occurred daily and lasted a few hours. Plaintiff told Dr. Garg that he experienced tremors when his right hand was stressed, when he used his hands, and when his hands were unsupported. (Tr. 288). Plaintiff was diagnosed with Rheumatoid Arthritis. (Tr. 290). On September 24, 2010, Plaintiff told Dr. Garg that his tremors were improving. (Tr. 291).

On May 16, 2011, Dr. Paul Malick completed a Medical Questionnaire in which Plaintiff was diagnosed with diabetes, obesity, tremors, and hypertension. Dr. Malick indicated that

Plaintiff: had knee, back, and shoulder pain; could not carry more than 10 pounds, sit more than two hours, and stand/walk more than 15 minutes (Tr. 369, 373); needed to take breaks every 1 to 2 hours for 20-30 minutes; and must rest a total of 3-4 hours in an 8-hour day. He also indicated that Plaintiff would be absent from work more than four days per month (Tr. 373); can rarely look down, turn his head, twist, stoop, and climb stairs; can never crouch/squat or climb ladders; and can only occasionally look up. Dr. Malick noted that Plaintiff's pain constantly interferes with the attention and concentration needed to perform even simple work tasks. (Tr. 374). He concluded that Plaintiff could not perform a full-time job on a sustained basis, but stated his prognosis was "good." (Tr. 370).

### 3. Vocational Expert

During the hearing, the ALJ asked a vocational expert ("VE") to assume a hypothetical individual who is 57-years-old, has a 10th grade education, Plaintiff's past work experience and the following physical limitations: he can only lift 10 pounds, sit and stand six hours, and walk two hours; he needs a sit/stand option; can occasionally climb ramps and steps, balance, stoop, kneel, crouch and crawl; and must avoid unprotected heights. (Tr. 41). The VE testified that such individual could perform Plaintiff's past work as a mobile home salesperson and recruiter. (Tr. 43). The VE's opinion did not change when the ALJ added the limitation that the hypothetical individual could only occasionally handle objects. (Tr. 43).

However, the VE testified that the hypothetical individual would be precluded from work if he could rarely use his dominant hand, or if he had to be off task more than twenty percent of the day. (Tr. 44-45).

### C. *Plaintiff's Claims of Error*

Plaintiff argues that the ALJ's decision is not supported by substantial evidence in the record and is contrary to the Social Security Act. Specifically, Plaintiff argues that the ALJ: (1) did not properly assess Plaintiff's credibility about his pain, limitations, and tremors; and (2) did not give proper weight to the opinion of Plaintiff's treating physician.

### III.  DISCUSSION

#### A.  *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *See Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of

course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility") (internal quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

### B.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only

for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 CFR § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 CFR §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by his impairments and the fact that he is precluded from performing his past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given his RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 CFR §§ 416.920(a)(4)(v) and (g).

### C.    *Analysis and Conclusions*

#### 1.    The ALJ's Assessment of Plaintiff's Credibility

Plaintiff makes three arguments regarding the ALJ's credibility determination. The Court addresses each argument in turn.

##### a.    Plaintiff's Need to Elevate his Legs

Plaintiff first argues that his obesity and degenerative knee condition support his testimony that he needs to elevate his legs. According to Plaintiff, the ALJ erred by failing to address the need to elevate his legs which, he says, would significantly impact his ability to perform sedentary work. The parameters of sedentary work are set forth in the regulations:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 CFR §§ 404.1567(a) and 416.967(a). The regulations do not preclude an individual who periodically needs to elevate his legs from sedentary work. Plaintiff testified that he needs to elevate his legs two to three times a day and that he elevates his legs, at home, while seated (Tr.

38). In addition, Plaintiff was represented by an attorney at the administrative hearing. Plaintiff's attorney failed to include Plaintiff's need to elevate his legs in her hypothetical question to the VE. Accordingly, there is no support in the record for Plaintiff's position that the need to elevate his legs renders him incapable of sedentary work.

### b.   ALJ's Discussion of the Medical Record

Plaintiff next argues that the ALJ's decision does not adequately address Plaintiff's medical record. According to Plaintiff, the ALJ only mentions three pieces of evidence: (1) the x-rays of Plaintiff's right knee from April 2007 and May 2008; (2) two reports from Dr. Garg; and (3) Dr. Malick's assessment.

The Court finds Plaintiff's argument lacks merit; he does not discuss what medical records the ALJ failed to consider. The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). However, it is unnecessary for the ALJ to address every piece of evidence. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x. 496, 507–08 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party") (internal quotation marks omitted). The ALJ's decision in this matter reflects that the ALJ considered the evidence as a whole, and, other than chronologically list every medical visit, Plaintiff does not point to any specific piece of medical evidence that the ALJ overlooked that would change the outcome. As such, Plaintiff's argument that the ALJ's discussion of the medical evidence is somehow bereft of detail is not well-taken.

### c.   Social Security Ruling 96-7p

Plaintiff's final argument regarding the ALJ's credibility determination is that the ALJ failed to comply with SSR 96-7p, which states:

-12-

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

Plaintiff testified that his diabetes[1], familial tremors, and arthritis prevent him from working.

(Tr. 33-34). With regard to Plaintiff's testimony regarding his familial tremors, the ALJ stated:

> [Plaintiff] testified that tremors prevent him from working because his penmanship is unintelligible.
>
> . . .
>
> In terms of his tremors, [Plaintiff] saw Ram Garg, M.D. for consultation on September 1, 2010. He reported uncontrollable left hand shakes, having to clench his fist and hold his fist close to his body to make it stop. [Plaintiff] stated that this complaint did not limit his activities. Upon examination, he had 5/5 strength throughout. At follow up, on September 24, 2010, [Plaintiff] reported that his tremors were improving, up to 50% improvement since his last visit. In December 2010, he reported that his handwriting was getting better also.

(Tr. 14-15). The Court finds the ALJ supported his conclusion that Plaintiff's testimony regarding his familial tremors was not fully credible using the medical evidence.

> With regard to Plaintiff's testimony about his arthritis, the ALJ found the following:
>
> [Plaintiff] testified that . . . [h]is arthritis becomes painful with rainy weather and standing or sitting for too long. His daily pain was rated at 2.5-8/10. He stated that it only becomes a[] 7 or 8 when the weather is inclement or when he has lifted more than he should. Walking too much causes his knees to stiffen up. His shoulder causes the most pain. Despite these allegations, [Plaintiff] testified that he is able to watch television, read, use a computer, do dishes, clean, drive, participate in church activities, and visit with friends and family.
>
> . . .

---

[1] The ALJ found that Plaintiff's diabetes was a nonsevere impairment. (Tr. 12).

> An April 2007 x-ray of the right knee showed severe degenerative joint disease. May 2008 x-rays showed narrowing of the medial compartment. Recommended treatments have been physical therapy, injections, home exercise program, anti-inflammatory medications, chiropractic treatment, and weight reduction. His left shoulder has been treated for bicipital tendonitis and calicific tendonitis.
>
> . . .
>
> In May 2011, Paul Malick, D.O. completed medical questionnaires, after treating [Plaintiff] for a time period of two weeks. [T]he arthritic pain was noted to be a 1/10 on the pain scale.

(Tr. 14-15). Contrary to Plaintiff's argument, the ALJ explained the specific reasons why he found Plaintiff's subjective complaints regarding his arthritis not fully credible. The ALJ referred to x-rays taken in April 2007 and in May 2008, Plaintiff's testimony concerning his daily activities, and a May 16, 2011 questionnaire (approximately two months before the July 28, 2011 hearing) completed by Dr. Malick indicating that Plaintiff's arthritic pain was only a "1/10 on the pain scale" (Tr. 372).

This Court does not make its own credibility determinations. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *see also Lawson v. Comm'r of Soc. Sec.*, 192 Fed. App'x. 521, 528 (6th Cir. 2006). The Court cannot substitute its own credibility determination for the ALJ's. The Court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed ...." *Kuhn v. Comm'r of Soc. Sec.*, 124 Fed. App'x. 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Comm'r of Soc. Sec.*, 152 Fed. App'x. 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of

observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *see also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007).

The ALJ adequately discussed his reasons for finding that Plaintiff's subjective complaints were not fully credible. Therefore, the Court finds that the ALJ's credibility determination is supported by substantial evidence. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990); *see also Infantado v. Astrue*, 263 Fed. App'x 469, 475-76 (6th Cir. 2008).

### 2. The ALJ Did Not Err By Failing to Give Plaintiff's Treating Physician's Opinion Controlling Weight

Finally, Plaintiff argues that the ALJ erred by not giving controlling weight to his treating physician's opinion (Dr. Malick).

Under the treating source rule, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 CFR § 404.1527(d)(2)); *see also* SSR 96–2p. Furthermore, even where the ALJ finds that a treating physician's opinion is not entitled to controlling weight, he or she must apply the following non-exhaustive list of factors to determine how much weight to give the opinion: (1) "the length of the treatment relationship and the frequency of examination," (2) "the nature and extent of the treatment relationship," (3) the relevant evidence presented by a treating physician to support his opinion, (4) "consistency of the opinion with the record as a whole," and (5) "the specialization of the treating source." *Id.*; 20 CFR § 404.1527.

The treating-source rule also "contains a clear procedural requirement." *Wilson*, 378 F.3d at 544 (citing 20 CFR § 404.1527(d)). In particular, "the [ALJ's] decision must contain specific

-15-

reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96–2p, 1996 WL 374188 at *5; *Rogers*, 486 F.3d at 242. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243; *see also Wilson*, 378 F.3d at 544 ("[t]he regulation requires the agency to "give good reasons" for not giving weight to a treating physician in the context of a disability determination") (citation omitted).

On the other hand, the issue of whether Plaintiff is disabled within the meaning of the Social Security Act is reserved to the Commissioner. *See* 20 CFR § 404.1527(e); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *Gaskin v. Comm'r of Soc. Sec.*, 280 Fed. App'x. 472, 474 (6th Cir. 2008). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *see also Kidd v. Comm'r of Soc. Sec.*, 283 Fed. App'x. 336, 340 (6th Cir. 2008). An opinion that is based on Plaintiff's reporting of his symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876-77 (6th Cir. 2007).

The ALJ stated the following regarding Dr. Malick's opinion:

> In May 2011, Paul Malick, D.O. completed medical questionnaires, after treating [Plaintiff] for a time period of two weeks. Diagnoses noted were diabetes, obesity, hypertension, tremors, and high cholesterol with symptoms of tremors, fatigue, and arthritis pain. The arthritic pain was noted to be a 1/10 on the pain

>scale.  Dr. Malick found that [Plaintiff] could not carry more than 10 pounds and could not sit for more than two hours.  Additional limitations included elevation of legs, unscheduled break periods, handling, and the need to be absent more than four days per month.  Although Dr. Malick opined that his prognosis was good, he concluded that [Plaintiff] was not capable of performing a full time job.  The undersigned finds that the specific objective findings needed to support the level of restrictions noted by Dr. Malick are not documented, so his opinion as to [Plaintiff's] ability to perform work related activities is given little weight.

(Tr. 15).  The Court finds the ALJ reasonably found Dr. Malick's opinion merited only little weight.  The record contains no treatment notes or any objective findings made by or relied on by Dr. Malick.  Absent supporting evidence, the ALJ was not bound to give controlling or significant weight to Dr. Malick's opinion.  *See Price v. Comm'r of Soc. Sec.*, 342 Fed. App'x 172, 176 (6th Cir. 2009) ("[b]ecause Dr. Ashbaugh failed to identify objective medical findings to support his opinion [on a questionnaire] regarding Price's impairments, the ALJ did not err in discounting his opinion") (citations omitted); *see also Buxton*, 246 F.3d at 773 (the ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation").

>The ALJ gave great weight to the opinion of the State Agency reviewing physician:
>
>As for the opinion evidence, the State Agency reviewer opined that although [Plaintiff] had severe physical impairments, his limitations were not of a severity to functionally meet the disability criteria.  I have accorded great weight to that opinion, as the medical evidence substantiates the findings and as a medical consultant with the Administration, he is well-versed in the assessment of functionality as it pertains to the disability provisions of the Social Security Act, as amended.

(Tr. 15).  It was proper for the ALJ to adopt the reviewing physician's opinion over the treating physician's opinion.  *See Combs*, 459 F.3d at 651-52 (affirming ALJ's decision to discount the treating physician's RFC determination and credit the State Agency's reviewing physician's determination).

## IV. CONCLUSION

Based on the foregoing, Plaintiff's motion for summary judgment is **DENIED**, Defendant's motion for summary judgment is **GRANTED**, and the findings and conclusions of the Commissioner are **AFFIRMED**.

**IT IS ORDERED**.

s/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated: October 18, 2012

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, October 18, 2012, by electronic and/or ordinary mail.*

*s/Melody Miles*
*Case Manager to Maqgistrate Judge Mark A. Randon*